## Case No. 14,514.

### UNITED STATES v. BANK OF ALEXANDRIA.

[1 Cranch, C. C. 7.] [1]

Circuit Court, District of Columbia. April Term, 1801.

MANDAMUS—ADEQUATE LEGAL REMEDY—COMPLAINANT'S RIGHT.

If the right of the party applying for a mandamus be not clear, or if he have an adequate legal remedy, equivalent to a specific remedy, the court will not grant the mandamus.

On the first day of this term, the president and directors of the Marine Insurance Company obtained a rule on the president and directors of the Bank of Alexandria, to show cause on the sixth day of this term why a mandamus should not issue commanding the president and directors of the Bank of Alexandria to admit the president and directors of the insurance company to subscribe for twenty-five of the unsubscribed shares of the augmented capital stock of the bank.

Mr. Simms, for the bank, showed, for cause, that the bank did not think it expedient that the new shares should be filled; that the bank is not compellable to open their books now for subscriptions; that the bank has no right to open them. By the act of incorporation of the bank, November 23, 1792, the stock was to consist of 750

[1] [Reported by Hon. William Cranch, Chief Judge.]

shares of 200 dollars each, to be paid, ten dollars in specie on each share at the time of subscribing, forty dollars within fifteen days, twenty-five dollars in thirty days, fifty dollars in sixty days, and the remaining seventy-five dollars in one hundred and twenty days, after the election of the directors. On the 7th of December, 1792, the subscription was opened, and filled the same day. On the 27th of January, 1793, the first directors were chosen. On the 5th of December, 1795, the act passed for augmenting the capital stock, by which three hundred and fifty thousand dollars were to be subscribed in shares of two hundred dollars each; the books were to be kept open thirty days, or until the whole shares should be filled; and if, at the end of the thirty days, a greater number of shares should be subscribed for than the act allowed, the surplus should be averaged and deducted from the subscriptions, pro rata, so that each subscriber should retain at least one share. The whole number of new shares was to be 1,750. The books were kept open one hundred and twenty days after the expiration of the first thirty, and were again opened and kept open until 7th April, 1797; 554 shares were subscribed in the thirty days and 296 shares were subscribed after the thirty days. The payments were to be made in the same number of days from the time of opening the subscription as are limited in the first act, after the time of election of the directors. Perhaps they had a right to keep the subscription open until the last payment, but not longer. Co. Litt. 381, as to the construction of statutes; 4 Bac. Abr. 645, 652. The inconvenience of the construction contended for, would be very great, as every new subscription requires a settlement of the affairs of the bank, because a new subscriber is not entitled to any part of the profits arising before he subscribed.

Mr. Chapin, cashier of the bank, testified that he received orders from the president of the bank not to receive any more subscriptions, but did not recollect when he received those orders. It was while Mr. Herbert was president. On the second opening of the books, subscribers paid by instalments; afterwards they paid the money down.

E. J. Lee, C. Lee, and Mr. Mason, in support of the rule. A mandamus is the proper remedy. No suit at law could place the insurance company in the situation of stockholders of the bank. It issues to any corporation requiring them to do some particular thing therein specified which appertains to their office and duty. 3 Bl. Comm. 110. The insurance company have a right to be stockholders; it is a function, and attended with emoluments. No specific legal remedy exists. Rex v. Barker, 3 Burrows, 1265. It lies to admit a person into a company of merchants. Rex v. Turkey Co., 2 Burrows, 999. It has been said that the act for aug-

mentation could not be carried into effect because the payments were to be made in a limited time after the opening of the books; but that difficulty is avoided by the payment of the whole subscription at the time of subscribing, and in this case the insurance company tendered the whole payment at once. As to the inconvenience to the bank, it may be said that the inconvenience to the public from the want of a larger capital stock in the bank, is as great or greater than that which the bank would sustain by being obliged to settle their accounts, &c. The bank has no discretionary right to refuse. The words of the act are imperative. The books shall be kept open thirty days, or until the whole number of shares is filled. The bank officers cannot say that they had a discretionary right to close at the end of thirty days, or to keep the books open as long after as they pleased, and then close before the whole shares were filled. They have given a construction to the act by keeping the books open after the thirty days, and are therefore obliged to continue them open until the whole number is complete. The bank has accepted the act, and is therefore liable to any inconveniences which may result. Buller, N. P. 199. It is a writ of right, and cannot be refused. It is to compel an obedience to its charter. It issues to private corporations, as well as to those who are concerned in the administration of public justice, as in the case of Rex v. Turkey Co. That corporation had no judicial powers. In Rex v. Blooer, 2 Burrows, 1043, a mandamus was ordered to a pensioner; and in Rex v. Askew, 4 Burrows, 2186, it was directed to the college of physicians to admit a person to practise physic. By the preamble of the act of 1792, the bank appears to have been instituted for the benefit of the public, and not of the individual stockholders. By first section, the books shall be kept open. The same reasons are given in the preamble to the second act. The books must be kept open thirty days to prevent monopoly, and if the shares are not all filled in the thirty days, they must be kept open until they are all filled. There can be no doubt of the power of this court to grant the mandamus. The subscription is to be neither more nor less than three hundred and fifty thousand dollars, and the act says the subscription shall be taken. The expression, the subscription "shall be kept open thirty days, or until," &c., means that it shall be kept open thirty days at all events, and if the whole shares are not taken up in that time it shall be kept open until they are. The public have a right to insist that the stock should be augmented, if subscribers offer. The third section of the second act, which says the payments shall be made according to the first act, cannot be carried into operation. The act must therefore be taken as if no such section had been inserted; and in such case the bank, under its authority to make by-laws and regulations, might have ordered the mode of payment. Unless the subscriptions are now opened, the capital can never be augmented, because congress have pledged themselves to the Bank of the United States.

Mr. Swann, contrà. A mandamus will not lie but where the government, or the public, or the administration of justice, is concerned. The cases in 3 Bac. Abr. 530, are all upon the ground of the applicant being a public officer. So is the case in 6 Mod. 18; Ld. Raym. 540, 560. In Jac. Dict. tit. "Corporation," a corporation is distinguished from a body politic. There are public corporations and private corporations. A private corporation is like a private individual, and liable to process as a natural person. This is not a public concern. The people of Virginia were not interested in it. The case of Rex v. Blooer concerned the religion of the country. The case in 3 Burrows, 1650, concerned education, which is a public concern. In the case in 4 Burrows, 2188, the college of physicians had power to hold a court. A mandamus will never be granted where there is another specific remedy. 3 Bl. Comm. 110; 1 Wils. 12, 21, 76, 125, 206, 283, 305; 2 Strange, 1082; Rex v. Bishop of Chester, 1 Term R. 396, 404. The bank is a private corporation; the remedy is by a bill in chancery, or by an action on the case. Rex v. Bank of England, 2 Doug. 523. The court will not grant a mandamus if the right of the applicant is not clear, and if he has another remedy equivalent to a specific remedy. The words of the two laws are different. The first law is imperative: the books shall be kept open until the whole number of shares shall be subscribed. The second law says thirty days, or until the whole number shall be subscribed, thereby leaving it discretionary with the bank.

C. Lee, in reply. This is a public institution, because all persons have a right to subscribe as long as a share remains unsubscribed for. Buller, N. P. 149, tit. "Mandamus." There is no distinction between a public and a private corporation. In the Case of the Turkey Company, there was nothing said of a power to hold a court. It makes no difference. 1 Lev. 123; 1 Keb. 625, 629. In the case in Strange the court granted the mandamus, although a quare impedit would lie. In 1 Term R. 404, Buller, J., says it must be a legal as well as a specific remedy which will prevent a mandamus. The courts are bound to see that corporations properly exercise the powers vested in them by their charters. A court of law will not send an applicant to a court of chancery when it is confessed that a court of law is competent to give a remedy. Besides, here is no contract on which to ground a suit in chancery. In the case in Douglas, the right of the applicant was not clear, and that is the ground of the judgment of the court. The court only exercised its discre-

tion. The application for the mandamus rests on two grounds: (1) Whether the right of the applicants to be stockholders is clear. (2) Whether this is the proper remedy.

KILTY, Chief Judge. I shall not go at large into the reasons which influence me as to the first question, because it may hereafter be a subject of discussion. But my present impressions are, that the right is sufficiently clear. With regard to the second point, I feel some difficulty to decide. An action on the case may possibly afford a remedy, but it is by no means clear that it will afford a specific remedy equivalent to the one now sought for, or commensurate with the right of the applicants. Under this doubt, when I consider that a denial at this time will oblige the claimants to resort to a remedy that may not be effectual, and that by granting the mandamus nisi and de bene esse, open to all objections on the return, the bank will not be concluded. My opinion is, that the rule should be made absolute for a mandamus to admit the Marine Insurance Company to subscribe the twenty-five shares prayed for, or to show the reasons why they are not admitted. This is also on the ground of the facts being by proof and admission sufficiently before the court.

MARSHALL, Circuit Judge, was of opinion that the rule ought to be discharged, without costs.

CRANCH, Circuit Judge. It does not appear to me that the right of the insurance company is sufficiently clear; and if they have the right, they have a legal remedy by action on the case adequate to a specific remedy; for if, on a trial at law, they establish their right, a jury will give them damages, which will enable them to purchase the shares at market; and the bank will be obliged to open their books again, or suffer the constant inconvenience of paying damages and costs to every person who wishes to become a subscriber. I am therefore for discharging the rule, but without costs.

In consequence of this opinion of the court, the bank opened their books for subscription.